U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 NOV 22  AM 10: 33

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DAVID SMILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:10-cv-61 |
| | ) |
| THOMAS CHITTENDEN HEALTH | ) |
| CENTER, PLC, and | ) |
| JOSEPH G. THERIAULT, M.D., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS**
(Doc. 15)

This matter came before the court for a hearing on October 1, 2010 on the motion to dismiss first amended complaint (Doc. 15), filed by Defendants, Thomas Chittenden Health Center, PLC ("the Health Center") and Joseph G. Theriault, M.D. ("Dr. Theriault"). Defendants contend that Plaintiff David Smiley's complaint is time-barred pursuant to Vermont's medical malpractice statute of repose, 12 V.S.A. § 521. Plaintiff opposes dismissal. The court permitted the parties to submit post-hearing briefs by October 15, 2010; none were filed.

Plaintiff is represented by Thomas J. Sherrer, Esq. Defendants are represented by Angela R. Clark, Esq. and John D. Monahan, Jr., Esq.

**I. Procedural and Factual Background.**

Plaintiff's initial complaint was filed on March 25, 2010, alleging a single cause of action for negligence and vicarious liability against Defendants. Defendants filed a motion to dismiss the action as time-barred under 12 V.S.A. § 521. After informal

discovery, Plaintiff amended his complaint whereupon Defendants renewed their motion to dismiss.

The First Amended Complaint alleges the following facts. The Health Center is a primary care medical facility operated by a professional liability company and is located in Williston, Vermont. Dr. Theriault is a licensed Vermont physician who practiced at and was employed by the Health Center. On February 12, 2003, Plaintiff became a patient at the Health Center, and received a routine physical examination. As part of that examination, Dr. Theriault ordered routine laboratory tests.

On February 17, 2003, the Health Center received an Outpatient Laboratory Report (the "Lab Report") which revealed what Plaintiff characterizes as "extraordinarily elevated results on some of [Plaintiff's] liver functions tested." (Doc. 14 ¶ 8.) Two values on the Lab Report were circled with a note to follow up with the patient. The Lab Report contains a handwritten notation: "S. Lett. 2-18-03." Plaintiff contends that this notation appears to indicate that a letter was allegedly sent to him on February 18, 2003. Plaintiff has no recollection of receiving such a letter.

Plaintiff returned to the Health Center on June 13, 2003 for medical treatment related to a sports injury. During that visit, the Health Center allegedly did not investigate, diagnose, treat, or rule out the causes for the liver function results shown on the Lab Report. On June 16, 2003, Plaintiff returned to the Health Center for follow-up treatment concerning his sports injury. Again, the Lab Report was not addressed.

On April 6, 2004, Plaintiff returned to the Health Center for a rash which he now attributes to his abnormal liver function at that time. The Health Center did not address the Lab Report at this visit.

Thereafter, Plaintiff moved to New York. In January 2008, he saw a primary care physician in New Jersey for a routine physical examination. Lab results revealed elevated liver enzymes. In the spring of 2008, after further tests, a liver specialist confirmed that Plaintiff had autoimmune hepatitis. In May of 2008, Plaintiff obtained his prior medical records and discovered the elevated liver enzyme values documented in the Lab Report.

During May and June, 2008, Plaintiff was hospitalized for treatment of his autoimmune hepatitis. Over the next year and a half, he was placed on a drug that had long-term side effects and was placed on a liver transplant waiting list.

Plaintiff alleges that Defendants "either lacked the degree of knowledge or skill" ordinarily possessed by prudent health care providers, or "failed to exercise the degree of care ordinarily exercised" by such providers when they "failed to investigate, diagnose, treat or rule out the causes for the elevated laboratory results during the three subsequent office visits on June 13, 200[3], June 16, 2003 and April 6, 2004." (Doc. 14 ¶ 28.) As a result, Plaintiff alleges that his autoimmune hepatitis "progressed to the point over four (4) years where he has suffered significant complications and injury." (Doc. 14 ¶ 21.)

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

When assessing a motion to dismiss pursuant to Rule 12(b)(6), the court takes the complaint's "factual allegations to be true and draw[s] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The court need not credit "legal conclusions" in the complaint or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 72 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks and alteration omitted). In its analysis under Rule 12(b)(6), the court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted).

Although a Rule 12(b)(6) dismissal may be granted when the claim asserted has been extinguished by a statute of repose, the court must often await the development of a factual record before determining whether dismissal is appropriate. *See In re Evanston Northwestern Healthcare*, 2008 WL 2229488, *1 (N.D. Ill. May 29, 2008) ("Affirmative defenses such as the statute of limitations are generally not resolved with a motion to dismiss under Rule 12(b)(6)") (citing *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006)); *Foss v. Bear, Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir. 2005)

3

("[u]nless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development."); *see also Reach Music Publ'g, Inc. v. Warner/Chappell Music, Inc.*, 2009 WL 3496115, *2 (S.D.N.Y. Oct. 23, 2009) ("[G]enerally '[because] defendants have the burden of raising [an affirmative defense] in their answer and establishing [it] at trial or on a motion for summary judgment, a plaintiff, in order to state a claim . . . need not plead facts showing the absence of such a defense.'") (quoting *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996)).

In this case, federal jurisdiction is based on diversity of citizenship. Accordingly, the court applies the substantive law of Vermont, the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

### B. Vermont's Medical Malpractice Statute of Repose.

In seeking dismissal, Defendants contend that Plaintiff's claims are barred by Vermont's medical malpractice statute of repose which provides:

> [A]ctions to recover damages for injuries to the person arising out of any medical or surgical treatment or operation shall be brought within three years of the date of the incident or two years from the date the injury is or reasonably should have been discovered, whichever occurs later, *but not later than seven years from the date of the incident*. No statute of limitations shall limit the right to recover damages for injuries to the person arising out of any medical or surgical treatment or operation where fraudulent concealment has prevented the patient's discovery of the negligence. Where the action is based upon the discovery of a foreign object in the patient's body, which is not discovered within the period of limitation under this section, the action may be commenced within two years of the date of the discovery of the foreign object.

12 V.S.A. § 521 (emphasis supplied).

Section 521's seven-year statute of repose "establishes a maximum length of time within which a plaintiff must commence suit for injury even if the cause of action is not barred by any applicable statute of limitations." *Cavanaugh v. Abbott Labs.*, 145 Vt. 516, 528, 496 A.2d 154, 161-62 (1985). It "begins to run without interruption once the necessary triggering event has occurred " and the "right is no longer available on the

expiration of the specified period of time." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) (citation omitted). However, neither Section 521 nor the Vermont Supreme Court has defined the necessary triggering event for the statute of repose which is "the date of the incident."

Defendants contend that "the operative incident for purposes of the statute of repose was Defendants' initial failure to diagnose and treat the causes of the elevated test results when they were received in February 2003." (Doc. 15 at 3.) Defendants point to cases that have held that a claim for failure to communicate test results commences as of the date the test results are received. (Doc. 20 at 5-6) (citing *Ferrara v. Wall*, 753 N.E.2d 1179, 1183 (Ill. App. Ct. 2001) (holding that the repose period was "triggered at the time that the defendant received the abnormal test results and failed to communicate them to the plaintiff. This omission was the act that was the cause of the plaintiff's alleged injuries."); *Conner v. St. Luke's Hospital, Inc.*, 996 F.2d 651, 655 (4th Cir. 1993) (holding that patient's cause of action accrued when she underwent first x-ray, the results of which were not disclosed to her, where statute of repose commenced on "the last act of the defendant giving rise to the cause of action . . . .").

Defendants contend that they are entitled to dismissal as a matter of law because Plaintiff's initial complaint was filed more than seven years after Defendants' receipt of the Lab Report and, thus, at the time of filing, Section 521's statute of repose had extinguished Plaintiff's medical malpractice claims. Noting that the Vermont Legislature has not adopted a continuing treatment exception to Section 521's statute of repose, Defendants urge the court not to find such a doctrine applicable here. Moreover, because Plaintiff alleges Defendants *failed to treat* his alleged liver problems, Defendants argue that the continuing treatment doctrine is factually inapplicable as well.

Plaintiff counters that he is not claiming that the Lab Report was not sent to him. Indeed, he acknowledges that the handwritten notation on the Lab Report suggests that it was. Accordingly, he alleges no malpractice occurred on the date Defendants received the Lab Report. Instead, he asserts Defendants' malpractice occurred thereafter when Defendants failed to address the concerns raised by the Lab Report during Plaintiff's

5

subsequent visits to the Health Center on June 13 and 16, 2003 and on April 6, 2004 and thus failed to "follow up on their own recognition of a potentially serious problem." (Doc. 19 at 2.) Using any of these dates as "the date of the incident," Plaintiff contends that he filed his initial complaint within the statute of repose.

Although Plaintiff does not rely on a continuing treatment exception to Section 521's statute of repose, he argues that the doctrine is instructive as here "[t]here is no magic date [on] which the Defendants had an affirmative duty to follow up on their own letter to [him]." (Doc. 19 at 3). He points to *Turner v. Nama*, 689 N.E.2d 303 (Ill. App. Ct. 1997), *appeal denied*, 698 N.E.2d 549 (1998), wherein as part of a continuing treatment analysis, the court chose a two-month period as the outside limit during which a health care provider must satisfy his or her obligation to inform a patient of unfavorable test results.

In Vermont, no continuing treatment exception to Section 521's statute of repose exists and this court has no authority to create one. *See Leo v. Hillman*, 164 Vt. 94, 103, 665 A.2d 572, 578 (1995) ("[T]he Legislature establishes statute of limitations, and neither equity nor certainty would be fostered by reading exceptions into otherwise clear text in the name of a desirable social policy."). Moreover, the court agrees with Defendants that the continuing treatment doctrine is factually inapplicable to this case as no continuing treatment is alleged. The court's interpretation of Section 521 is thus devoid of a continuing treatment analysis.

### C. Defining "Date of the Incident."

Under Vermont law, "[w]ords in a statute without definition are to be given their plain and commonly accepted use." *Shetland Props., Inc. v. Town of Poultney*, 145 Vt. 189, 194, 484 A.2d 929, 932 (1984) (internal quotation marks omitted). An "incident" commonly refers to "[a] discrete occurrence or happening." BLACK'S LAW DICTIONARY 830 (9th ed. 2009).

To properly define an undefined term in a statute, a court also "must evaluate the meaning of . . . terms in the context of the statute." *See In re E.C.*, 2010 VT 50, ¶ 10, 1 A.3d 1007. Section 521 uses "the date of the incident" as the triggering event for both a

statute of limitations and a statute of repose governing medical malpractice claims "arising out of any medical or surgical treatment or operation . . . ." 12 V.S.A. § 521. In doing so, it distinguishes between "the date of the incident" and "the date the injury is or reasonably should be discovered," rendering it clear that the two are not one and the same. Indeed, under Section 521, a medical malpractice claim is extinguished if brought "later than seven years from the date of the incident," even if it has yet to be discovered. Accordingly, no proper interpretation of "the date of the incident" should include a "discovery rule" type of analysis.

In the absence of a discovery rule, Vermont law generally defines a "triggering event" as the date upon which the medical malpractice or other tort occurred. *See Estate of Hitchcock v. Tonino*, 2006 WL 2709684, at *4 (D. Vt. Sept. 20, 2006) ("Traditionally, a cause of action in tort for personal injury accrued at the time of the negligent act . . . when the negligent conduct occurred . . . In this context, 'injury' is not only a 'personal injury,' but also includes a 'legal injury.'")

Harmonizing both the plain language of the term "date of the incident" and the context in which it occurs, the court concludes that the "date of the incident" for purposes of Section 521's statute of repose is the date upon which the malpractice occurred. This definition is consistent with not only Vermont law, but with the majority of other jurisdictions. "In a large majority of states, the statute [of repose] begins to run, without exception. . . at the time of the alleged medical malpractice." Robin Miller, Annotation, *Timeliness of Action Under Medical Malpractice Statute of Repose, Aside from Effect of Fraudulent Concealment of Patient's Cause of Action*, 14 A.L.R. 6th 301 (2006) (citing Vermont as one of those states).

### D. Application of the Statute of Repose.

Defining the "date of the incident" as the date the medical malpractice occurred does not end the inquiry in this case. At oral argument, Defendants conceded that their mere receipt of the Lab Report did not give rise to a cause of action for medical malpractice. Rather, if any such claim exists, it arises out of what Defendants did or failed to do thereafter.

In turn, at the court's hearing, Plaintiff conceded that the applicable standard of care may have required Defendants to follow-up with Plaintiff within days or weeks of sending the alleged letter noted on the Lab Report, rather than awaiting the fortuity that Plaintiff would present himself some months later for treatment at the Health Center for an unrelated injury.

Under Vermont law, a "plaintiff [alleging medical malpractice] has the burden of proving the applicable standard of care, that defendant breached that standard, and that as a proximate result plaintiff suffered injuries that would not otherwise have occurred." *Jones v. Block*, 171 Vt. 569, 569, 762 A.2d 846, 848 (2000). Ordinarily, "these elements must be proved by expert testimony." *Id.* (citation omitted).

In this case, the applicable standard of care has not been established. In addition, there is no evidence, other than Plaintiff's allegations, that the Lab Report contained results that were unduly alarming or that required immediate or prompt intervention. Moreover, unlike in cases where there is a complete and acknowledged failure to communicate lab test results, here there is some evidence to suggest that Defendants sent the Lab Report to Plaintiff. Expert testimony may reveal that, according to the applicable standard of care, nothing more was required. In that event, Plaintiff argues that Defendants' medical malpractice occurred for the first time on June 13, 2003 when Plaintiff presented himself to the Health Center for treatment of an unrelated injury and Defendants allegedly failed to review Plaintiff's file and address the liver function results set forth in the Lab Report. Defendants do not refute whether this would be a breach of the applicable standard of care, nor reasonably should they. Determination of the relevant facts and the applicable standard of care cannot take place in the context of a Rule 12(b)(6) motion to dismiss. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006); *see also Bice v. Robb*, 324 F. App'x 79, 81 (2d Cir. 2009) (reversing and remanding dismissal because question of whether statute of limitations had run "turns on a number of unresolved issues of fact that would benefit from discovery."). Accordingly, while "[t]he question of the applicability of a statute of repose to a set of undisputed facts is . . . a pure question of law," *Stoll v. Burlington Elec.*

8

*Dep't*, 2009 VT 61, ¶ 7, 186 Vt. 127, 977 A.2d 1282, here the relevant facts and the applicable standard of care have yet to be determined.

## CONCLUSION

For the reasons stated above, the court hereby DENIES the Defendants' Motion to Dismiss the First Amended Complaint.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 22nd day of November, 2010.

_____
Christina Reiss
United States District Court Judge